## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| CAUSE OF ACTION INSTITUTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-778-CJN |
| ) | |
| UNITED STATES ) | |
| DEPARTMENT OF COMMERCE, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS
## MOTION FOR ORDER TO SHOW CAUSE

Defendant Department of Commerce's ("Commerce") opposition to Plaintiff Cause of Action Institute's ("CoA Institute") motion for an order to show cause, *see* ECF No. 19, rests on a fundamental misunderstanding of the operation of Federal Rule of Civil Procedure 6(b)(1). *See* ECF No. 21. Commerce's cursory opposition also relies on inapt caselaw and, most damningly, fails to offer any positive defense, with appropriate citation to legal authority, for the Department of Justice's ("DOJ") apparent policy of presuming that timely filed extension motions will be granted as an effective matter of right. *See id.*

If the Court were to deny CoA Institute's motion, it would create an incentive for the federal government to continually game the judicial system by moving for an extension of time at the last minute—an unfair play that disregards the Federal Rules of Civil Procedure and which a non-government litigant would never attempt. At the least, a mild sanction could begin to correct the government's behavior.

I.    **Commerce misinterprets Rule 6(b)(1) and fails to attend to the important distinction between timely filed extension requests and extension motions filed *after* a deadline has expired.**

Commerce argues that holding a party in contempt for failing to meet an existing court-ordered deadline during the pendency of an extension motion would "either render[] the Court's explicit power to grant such motions *nunc pro tunc* a nullity or put[] the Court on a clock that neither the Rues nor the Supreme Court has imposed." *Id.* at 2. But that position neglects the important distinction between instances where a party requests to extend its deadline *before that deadline has expired*, Fed. R. Civ. P. 6(b)(1)(A), and situations where a party moves to file (or act) out-of-time *after having already failed to meet its deadline* and upon a showing of "excusable neglect." *Id.* 6(b)(1)(B).

In this case, Commerce twice moved under Rule 6(b)(1) to extend its deadline to file its motion for summary judgment. Those extension requests were filed before the expiration of a court-ordered deadline. But neither of them included a concurrent motion for the Court to stay proceedings, and nothing in Rule 6(b)(1)(A) or the attendant caselaw suggests that an extension request entails an automatic stay during the pendency of the request's consideration by a court.

Commerce was admittedly within its rights to request an extension, as it did, but in doing so it assumed the risk that its request would *not* be granted—or, more specifically, that it would not be granted in time—and that Commerce would be required to meet its existing deadline. To understand a party's filing obligations otherwise would give an unfair advantage that could be prejudicial to an opponent.

Indeed, if a court's failure to rule on an extension request under Rule 6(b)(1)(A) before the expiration of a deadline accordingly suspended that deadline *ipso facto*, then the court could only be described as having effectively *granted* the extension.  But that result would deprive the court of its discretion to adjudicate the request.[1]

The proper reading of Rule 6 is similarly clear when one considers a hypothetical situation where a movant's timely extension request is *denied* after the expiration of a deadline.  In such a case, the movant would have failed to meet its deadline and it would be required to act on motion *nunc pro tunc* (if not within some other time period ordered by the court).  *See* Fed. R. Civ. P. 6(b)(1)(B).  But a motion under Rule 6(b)(1)(B) requires a "formal application" that meets the pleading requirements of Federal Rule of Civil Procedure 7(b) and that sets forth "facts constituting excusable neglect[.]" *Inst. for Policy Studies v. Cent. Intelligence Agency*, 246 F.R.D. 380, 383 (D.D.C. 2007).  An extension request (or motion) under Rule 6(b)(1)(A) *cannot* simply be re-considered under Rule 6(b)(1)(B).[2]  *See id.* ("It is questionable whether the Consent Motion meets the standard required by [Rule 6(b)(1)(B)]."); *cf. Smith v. Dist. of Columbia*, 430 F.3d 450, 456–57 (D.C. Cir. 2005)

---

[1] Additionally, this outcome would place an opposing party in an especially difficult position insofar as it also may be subject to court-ordered deadlines.  Here, Commerce's extension motions would have adjusted the *entire* court-ordered briefing schedule.  But if the Court had not acted by granting the extensions, and Commerce had not planned to meet its proposed deadlines, then CoA Institute would still have been obliged to move for summary judgment as scheduled.  In that sense, Commerce's position on the automatic suspension of deadlines would prejudice CoA Institute.

[2] The requirement to file a proper Rule 6(b)(1)(B) motion is not taken lightly by the courts.  "Courts routinely refuse to accept filings under these circumstances even where the delay is minor and no prejudice would result." *Inst. for Policy Studies*, 246 F.R.D. at 382 (citing cases).

(finding abuse of discretion by court in permitting an untimely filing in the absence of the specific motion required by Rule 6(b)(1)(B)).

The import of Rule 6(b)(1), and interplay between motions filed before and after a deadline has expired, is clear: a party requesting an extension must be prepared to meet its original deadline in the absence of the court acting.  To conclude otherwise would presume that the court will favorably dispose of an extension request, a position DOJ appears to have taken in this case.  And it would give the movant an unfair advantage insofar as the court's failure to act would effectively grant the movant's requested relief, which, again, is exactly what occurred here.  If a Rule 6(b)(1)(A) motion is denied, and the original deadline has expired, then the movant must file a new motion under Rule 6(b)(1)(B) and meet the applicable legal standards.

## II.    Commerce relies on inapt case law.

Commerce proffers paltry case law to support its position.  And each of those cases is entirely inapposite and fails to support Commerce's position.  The agency first turns to *Lujan v. National Wildlife Federation* to argue that a "court may grant [an] extension [motion] *after* the deadline passes."  ECF No. 21 at 1.  But the *Lujan* court was at best silent on that point and, in fact, carefully distinguished between a "request" for an extension filed *before* the expiration of a deadline and a "motion" *nunc pro tunc*.  497 U.S. 871, 896 n.5 (1990) ("Rule 6(b) establishes a clear distinction between 'requests' and 'motions,' and the one cannot be converted into the other without violating its provision[s].").  If anything, *Lujan* supports CoA Institute's reading of Rule 6(b)(1).  Further, CoA Institute has not argued that this Court may

not grant extensions after a deadline passes.  Of course, it may do so.  Rather, CoA Institute maintains that, if an extension motion is *not* granted, the movant must be prepared to file as previously ordered.

Commerce also points to two cases as exemplifying the "regular[] applic[ation] [of Rule 6(b)(1)] in federal district courts across the nation."  ECF No. 21 at 1.  Yet neither of those cases even speaks to the matter at hand.  In *Thompson v. United States*, the court merely recognized that Rule 6(b)(1)(A) allows a party to request an extension "without motion," so long as it is timely filed "for good cause."  No. 12-01659, 2013 U.S. Dist. LEXIS 120084, at *3 (D. Nev. Aug. 23, 2013).  And in *Go v. Rockefeller University*, the court only exercised its authority to grant *sua sponte* an extension for a *pro se* litigant to file a motion for substitution of party under Rule 25.  No. 04-4008, 2013 U.S. Dist. LEXIS 102460, at *12 (S.D.N.Y. July 19, 2013).  If Commerce's interpretation of Rule 6(b)(1) were so commonplace as to be "regularly applied . . . across the nation," then Commerce could have identified at least one relevant case.

### III.  Commerce fails to clarify and provide support for DOJ's apparent policy of treating extension motions as presumptively granted, and CoA Institute's motion is not moot.

It bears repeating that aside from its unsupported argument about the proper interpretation of Rule 6(b)(1), Commerce has done little to clarify DOJ's policy on whether a timely filed extension motion entails an automatic stay of court-ordered deadlines.  Commerce has done even less to explain opposing counsel's initial representation that DOJ effectively assumes that non-dispositive motions will be granted as a matter of course.

In the end, Commerce merely argues that its offense is not serious enough to warrant a finding of civil contempt.  But deadlines matter.  And repeated abuse of Rule 6(b)(1) should not go without consequence.  "'[D]elays are a particularly abhorrent feature of today's trial practice. . . .  Adherence to reasonable deadlines is critical to restoring integrity in court proceedings.'"  *Inst. for Policy Studies*, 246 F.R.D. at 382 (citing *Geiserman v. MacDonald*, 893, F.2d 787, 790 (5th Cir. 1990)).

Consequently, CoA Institute's motion is not entirely moot, despite the Court granting Commerce's second extension motion.  Commerce's contumacious acts in this case are a matter of record, and CoA Institute's request for sanctions to "deter similar misconduct in the future," *Webb v. Dist. of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1988), is viable.  Further, CoA Institute has proposed that the Court impose a reduced page limitation on Commerce's briefs.  Because Commerce has yet to file its reply in support of its motion for summary judgment and in opposition to CoA Institute's cross-motion for summary judgment, the Court can still grant some of the additional relief set forth in the Proposed Order.  *See* ECF No. 19-1.

*     *     *

For the foregoing reasons and those set forth in its motion for order to show cause, Plaintiff CoA Institute respectfully requests that the Court grant the instant motion and order the requested relief.

Dated: August 22, 2019

Respectfully submitted,

*/s/ Ryan P. Mulvey*
Ryan P. Mulvey (D.C. Bar No. 1024362)
R. James Valvo, III (D.C. Bar No. 1017390)
Lee A. Steven (D.C. Bar No. 468543)

CAUSE OF ACTION INSTITUTE
1875 Eye Street, N.W., Suite 800
Washington, D.C. 20006
Telephone: (202) 499-4232
Facsimile: (202) 330-5842
ryan.mulvey@causeofaction.org
james.valvo@causeofaction.org
lee.steven@causeofaction.org

*Counsel for Plaintiff CoA Institute*