## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————

|  |  |  |
|---|---|---|
| CAUSE OF ACTION INSTITUTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-778-CJN |
| | ) | |
| UNITED STATES | ) | |
| DEPARTMENT OF COMMERCE, | ) | |
| | ) | |
| Defendant. | ) | |

———————————————————————

### PLAINTIFF CAUSE OF ACTION INSTITUTE'S OPPOSITION TO DEFENDANT DEPARTMENT OF COMMERCE'S MOTION FOR SUMMARY JUDGEMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56 and Local Civil Rule 7, Plaintiff

Cause of Action Institute opposes Defendant Department of Commerce's motion for

summary judgment, ECF No. 20, and cross-moves for summary judgment.

R. James Valvo, III (D.C. Bar No. 1017390)
Ryan P. Mulvey (D.C. Bar No. 1024362)
Lee A. Steven (DC Bar. No. 468543)
CAUSE OF ACTION INSTITUTE
1875 Eye St., NW, Suite 800
Washington, DC 20006
Telephone: (202) 499-4232
Facsimile: (202) 330-5842
james.valvo@causeofaction.org
ryan.mulvey@causeofaction.org
lee.steven@causeofaction.org

*Counsel for Plaintiff*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

FACTUAL AND LEGAL BACKGROUND ............................................................................. 2

    I.   The 232 Auto Tariffs Report ......................................................................... 2

    II.  Procedural History ....................................................................................... 5

STANDARD OF REVIEW .................................................................................................. 5

ARGUMENT ...................................................................................................................... 7

    I.   Commerce concedes the 232 Auto Tariffs Report is an agency record ............ 7

    II.  Commerce may not rely on Exemption 5 to withhold the report. ................... 7

        A.   The 232 Auto Tariffs Report is not an
              "inter-agency or intra-agency" record. ......................................... 8

        B.   The presidential-communications privilege does not apply
              to the 232 Auto Tariffs Report. .................................................... 13

        C.   The deliberative-process privilege does not apply
              to the 232 Auto Tariffs Report. .................................................... 23

        D.   There are no temporary privileges, and Commerce cannot waive
              the President's privilege. ............................................................. 26

        E.   Commerce must segregate non-exempt information in the report
              and release it to CoA Institute. .................................................... 32

CONCLUSION AND RELIEF SOUGHT ............................................................................. 35

## TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Afshar v. Department of State,*
    702 F.2d 1125 (D.C. Cir. 1983)........................................................... 34

*American Center for Law & Justice v. Department of State,*
    330 F. Supp. 3d 293 (D.D.C. 2018) ...................................................... 30

*Armstrong v. Executive Office of the President,*
    1 F.3d 1274 (D.C. Cir. 1993) .................................................................. 7

*Bruscino v. Federal Bureau of Prisons,*
    No. 94-1955, 1995 WL 444406 (D.D.C. May 15, 1995)........................ 28

*Bureau of National Affairs, Inc. v. Department of Justice,*
    742 F.2d 1484 (D.C. Cir. 1984)............................................................. 11

*Center for Effective Government v. Department of State,*
    7 F. Supp. 3d 16 (D.D.C. 2013) ..................................................... 16, 21

*Chesapeake Bay Foundation, Inc., v. United States Army Corps of Engineers,*
    722 F. Supp. 2d 66 (D.D.C. 2010) ....................................................... 34

*Citizens for Responsibility & Ethics in Washington v.*
    *Federal Election Commission,* 711 F.3d 180 (D.C. Cir. 2013) ............... 4

*Coastal States Gas Corp. v. Department of Energy,*
    617 F.2d 854 (D.C. Cir. 1980) .............................................................. 25

*Competitive Enterprise Institute v. Environmental Protection Agency,*
    232 F. Supp. 3d 172 (D.D.C. 2017) ........................................................ 6

*Defenders of Wildlife v. United States Border Patrol,*
    623 F. Supp. 2d 83 (D.D.C. 2009) .......................................................... 6

*Department of the Interior v. Klamath Water Users Protective Ass'n,*
    532 U.S. 1 (2001) ............................................................................ 11, 24

*Department of Justice v. Tax Analysts,*
    492 U.S. 136 (1989) ................................................................................ 7

*Dow Jones & Co. v. Department of Justice,*
    917 F.2d 571 (D.C. Cir. 1990) ......................................................... 13, 24

*Edmonds Institute v. Department of the Interior,*
    383 F. Supp. 2d 105 (D.D.C. 2005) ....................... 33

*Electronic Frontier Foundation v. Department of Justice,*
    739 F.3d 1 (D.C. Cir. 2014) ........................... 24

*Electronic Privacy Information Center v. Department of Homeland Security,*
    384 F. Supp. 2d 100 (D.D.C. 2005) ....................... 28

*Environmental Protection Agency v. Mink,*
    410 U.S. 73 (1973) .............................. 8, 11, 33

*Federal Open Market Committee of the Federal Reserve System v. Merrill,*
    443 U.S. 340 (1979) ................................ 27

*Food Marketing Institute v. Argus Leader Media,*
    139 S. Ct. 2356 (2019) ........................... 9, 10, 20

*Huffman v. Western Nuclear, Inc.,*
    486 U.S. 663 (1988) ................................ 6

*Judicial Watch, Inc. v. Department of Defense,*
    913 F.3d 1106 (D.C. Cir. 2019)................... 15, 16, 19, 20

*Judicial Watch, Inc. v. Department of Energy,*
    412 F.3d 125 (D.C. Cir. 2005) .......................... 8

*Judicial Watch, Inc. v. Department of Justice,*
    102 F. Supp. 2d 6 (D.D.C. 2000) ........................ 28

*Judicial Watch, Inc. v. Department of Justice,*
    365 F.3d 1108 (D.C. Cir. 2004)........................*passim*

*Judicial Watch, Inc. v. Department of the Treasury,*
    796 F. Supp. 2d 13 (D.D.C. 2011) ....................... 35

*Judicial Watch, Inc. v. United States Secret Service,*
    726 F.3d 208 (D.C. Cir. 2013) .......................... 12

*Krikorian v. Department of State,*
    984 F.2d 461 (D.C. Cir. 1993) .......................... 33

*Lardner v. Department of Justice,*
    No. 03-0180, 2005 WL 758267 (D.D.C. Mar. 31, 2005)................. 30, 31

*Lefkowitz v. Turley,*
    414 U.S. 70 (1973) ................................ 29

*Loving v. Department of Defense*,
    550 F.3d 32 (D.C. Cir. 2008) ........................................................ 15, 19

*Lucaj v. Federal Bureau of Investigation*,
    852 F.3d 541 (6th Cir. 2017) .............................................................. 11

*Meyer v. Bush*,
    981 F.2d 1288 (D.C. Cir. 1993).............................................................. 9

*Military Audit Project v. Casey*,
    656 F.2d 724 (D.C. Cir. 1981) ............................................................... 6

*Milner v. Department of the Navy*,
    562 U.S. 562 (2011) ...................................................................... 10, 20

*Miranda v. Arizona*,
    384 U.S. 436 (1966) ........................................................................... 30

*Multi Ag Media LLC v. Department of Agriculture*,
    515 F.3d 1224 (D.C. Cir. 2008)........................................................... 6, 7

*National Ass'n of Home Builders v. Norton*,
    309 F.3d 26 (D.C. Cir. 2002) ................................................................. 8

*National Labor Relations Board v. Robbins Tire & Rubber Co.*,
    437 U.S. 214 (1978) ............................................................................. 8

*National Labor Relations Board v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ...................................................................... 24, 28

*National Security Archive v. Central Intelligence Agency*,
    402 F. Supp. 2d 211 (D.D.C. 2005) ..................................................... 34

*New Prime Inc. v. Oliveira*,
    139 S. Ct. 532 (2019) ........................................................................... 9

*New York Times Co. v. Department of Justice*,
    756 F.3d 100 (2d Cir. 2014)................................................................. 26

*New York Times Co. v. Jascalevich*,
    439 U.S. 1317 (1978) ..................................................................... 15, 18

*Perrin v. United States*,
    444 U.S. 37 (1979) ............................................................................... 9

*Rockwell International Corp. v. Department of Justice*,
    235 F.3d 598 (D.C. Cir. 2001) ............................................................. 13

*Rojas v. Federal Aviation Administration,*
    927 F.3d 1046 (9th Cir. 2019) ................................................................ 11

*Ryan v. Department of Justice,*
    617 F.2d 781 (D.C. Cir. 1980) ......................................................... 11, 34

*Schlefer v. United States,*
    702 F.2d 233 (D.C. Cir. 1983) ............................................................... 25

*Schoenman v. Federal Bureau of Investigation,*
    575 F. Supp. 2d 136 (D.D.C. 2008) ...................................................... 6, 7

*United States ex rel. Schweizer v. Oce, N.V.,*
    577 F. Supp. 2d 169 (D.D.C. 2008) ........................................................ 30

*In re Sealed Case,*
    121 F.3d 729 (D.C. Cir. 1997) ........................................... 15, 19, 21, 27

*Soucie v. David,*
    448 F.2d 1067 (D.C. Cir. 1971) ............................................................. 11

*Trans-Pacific Policing Agreement v. United States Customs Service,*
    177 F.3d 1022 (D.C. Cir. 1999) ............................................................. 33

*United States v. Nixon,*
    418 U.S. 683 (1974) ...................................................................... 14, 19

*United States v. Philip Morris USA, Inc.,*
    No. 99-2496, 2004 WL 3253662 (D.D.C. Sept. 9, 2004) ........................ 16

*United We Stand America, Inc. v. Internal Revenue Service,*
    359 F.3d 595 (D.C. Cir. 2004) ............................................................... 13

*Weinberger v. Catholic Action of Hawaii,*
    454 U.S. 139 (1981) ............................................................................... 18

*Wolfe v. Department of Health & Human Services,*
    839 F.2d 768 (D.C. Cir. 1988) ............................................................... 20

**Constitution**

United States Constitution, Article I, Section 8 .......................................... 2

United States Constitution, Article 2, Section 2 ....................................... 15

## Statutes

5 U.S.C. § 552(a)(4) ............................................................................... 6, 7

5 U.S.C. § 552(a)(8) ................................................................................. 32

5 U.S.C. § 552(b) ..................................................................................... 32

5 U.S.C. § 552(b)(3) ................................................................................. 17

5 U.S.C. § 552(b)(5) ............................................................... 8, 10, 13, 28

19 U.S.C. § 1862 ........................................................................................ 2

19 U.S.C. § 1862(b)(3) ..................................................................... *passim*

42 U.S.C. § 4332(2)(C) ............................................................................ 18

44 U.S.C. § 2201(2) .................................................................................. 12

44 U.S.C. § 2204 ...................................................................................... 12

50 U.S.C. § 1846(c) .................................................................................. 17

The National Environmental Policy Act ............................................ 17, 18

The Presidential Records Act ............................................................... 7, 12

## Rules

Federal Rule of Civil Procedure 56 .......................................................... 5

## Other Authorities

Ana Swanson, *Trump Lifts Metal Tariffs and Delays Auto Levies, Limiting Global Trade Fight*, N.Y. Times, May 17, 2019, https://nyti.ms/2U6SvJm ......... 22

Cause of Action Institute, *Auto-Tariff Investigation Sets Dangerous Anti-Transparency Precedent*, Apr. 26, 2019, https://coainst.org/2ZJoRLT ........... 3

House Report No. 1380, 93d Cong., 2d Session (1974) .................................... 9

Paul A. Freund, *On Presidential Privilege*, 88 Harv. L. Rev. 13, 20 (1974) .............. 19

Vivian Salama, *et al.*, *White House Puts Off Final Decision on Auto Tariffs for 180 Days*, Wall St. J., May 17, 2019, https://on.wsj.com/2NC7nOC ............... 22

Webster's Seventh New Collegiate Dictionary (1963) ................................. 20

Webster's Third New International Dictionary (1961) ................................. 9

## INTRODUCTION

This case presents a series of straightforward questions.   May Congress condition its delegation of authority to an agency and the President on the agency preparing and publishing a report?   In doing so, may Congress limit which privileges an agency can use to withhold information within that report?  And, if so, does that requirement preclude the withholding of the same report under the Freedom of Information Act ("FOIA"), if the agency refuses to publish the report?

Before the President may adjust tariffs on goods under Section 232 of the Trade Expansion Act of 1962, he must consider the findings and recommendations of the Secretary of Commerce presented to him in a report.   That report *must* be published in the *Federal Register*, subject only to redactions for classified and proprietary information.   Here, Defendant Department of Commerce ("Commerce") prepared a report on the national-security impact of the importation of passenger vehicles and automobile parts ("232 Auto Tariffs Report").    Commerce has transmitted the report to the President but refuses publish it, as required by law. Plaintiff Cause of Action Institute ("CoA Institute") filed a FOIA request for the report after Commerce refused to perform its statutory duty.

Commerce continues to refuse to disclose the 232 Auto Tariffs Report under FOIA by arguing that it may be withheld in full under Exemption 5, by applying the presidential-communications and deliberative-process privileges.    Commerce is incorrect.   Even if the agency could rely on Exemption 5 in these circumstances, neither privilege protects the report from disclosure.  More importantly, Section 232 *requires* publication.  And quizzically, Commerce's motion for summary judgment is

bereft of *any* mention of this publication requirement; not even in its recitation of the statutory background does the agency explain the scope of its responsibilities under Section 232. That is, perhaps, unsurprising. Section 232's publication requirement dooms Commerce here. That provision—along with the President's own actions—vitiates any confidentiality interests and prevents the use of the privileges asserted. The Court should therefore deny Commerce's motion for summary judgment and grant CoA Institute's cross-motion.

<u>FACTUAL AND LEGAL BACKGROUND</u>

## I.     The 232 Auto Tariffs Report

The United States Constitution grants Congress the sole authority to set tariffs and "regulate Commerce with foreign Nations[.]" U.S. Const. art. I, sec. 8. Section 232 of the Trade Expansion Act of 1962 delegates some of that authority and allows the President to adjust tariffs on imported articles to safeguard national security. 19 U.S.C. § 1862. But Congress's delegation of authority is conditioned, given that the President cannot determine an article's impact on national security without a report from the Secretary of Commerce. Section 232 provides that "[u]pon request of the head of any department or agency, upon application of an interested party, or upon his own motion, the Secretary . . . shall" investigate whether importation of an article affects national security. *Id.* § 1862(b)(1)(A). Within 270 days of starting an investigation, the Secretary must create and submit a report to the President with findings and recommendations about whether to impose tariffs. *Id.* § 1862(b)(3)(A). Section 232 then provides that "[a]ny portion of the report . . .

which does not contain classified information or proprietary information . . . *shall* be published in the *Federal Register*," a provision Commerce omits from the statutory summary it provided to this Court.  *Id*. § 1862(b)(3)(B) (emphasis added).  The statute neither provides a timetable for publication nor does it provide for presidential input or control over publication.

The current Administration has invoked the Section 232 process five times. Commerce has investigated and created reports on the national-security impacts of the importation of steel, aluminum, uranium, titanium sponge, and automobiles.[1] Pl.'s Statement of Undisputed Material Facts ¶ 1 [hereinafter Pl.'s SUMF].  When Commerce completed its reports on steel and aluminum in 2018, it transmitted those reports to the President and—within one month—published executive summaries in the *Federal Register* and full reports on its website, subject to redactions of classified and proprietary information.  *Id*. ¶ 2.

After completing reports on automobiles and uranium, however, Commerce refused to comply with Section 232's publication requirement and, to date, has failed to make those reports available through the *Federal Register* or on its website.[2]  CoA Institute submitted FOIA requests to Commerce seeking access to both reports.  *Id*. ¶¶ 5, 12.  In response to the request seeking access to the 232 Auto Tariffs Report, the subject of this litigation, Commerce categorically refused to

---

[1] Commerce's titanium-sponge investigation is ongoing and, to CoA Institute's knowledge, the agency has not yet produced a report.  Pl.'s SUMF ¶ 1.

[2] *See* Cause of Action Inst., *Auto-Tariff Investigation Sets Dangerous Anti-Transparency Precedent*, Apr. 26, 2019, https://coainst.org/2ZJoRLT (detailing "lack of transparency compared to the steel and aluminum process is stark, [where] . . . the reports for steel and aluminum [were] published upon completion").

disclose the report, claiming it may be a presidential record or exempt under the presidential-communications and deliberative-process privileges. Decl. of Brian D. Liberman Ex. 5, ECF No. 20-3.

Oddly, Commerce took a markedly different position on its ability to disclose the uranium report. The agency granted CoA Institute's FOIA request for that report and, in its final determination letter, stated that it "intend[ed] to provide all non-exempt documents responsive to [the] request." Decl. of R. James Valvo, III Ex. 1 at 1. Commerce claimed neither that the uranium report may be a "presidential record" nor that it could be withheld in full under Exemption 5.

Commerce still has not produced the uranium report to CoA Institute, Pl.'s SUMF ¶ 15, despite the FOIA requiring it to make the report "promptly available" after granting a request, which "mean[s] within days or a few weeks of a 'determination,' not months or years[.]" *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013). Following the President's decision not to impose tariffs on the importation of uranium, *see* Valvo Decl. Ex. 2 at 2, Commerce informed CoA Institute that the "executive summary [of the uranium report] will be printed in the [*Federal Register*] within the next 30 days and the full report will be on [Commerce's Bureau of Industry and Security] website." *Id.* at 1. Fifty days have now elapsed, and Commerce still has not published the uranium report in the *Federal Register* or complied with the FOIA by releasing it to CoA Institute.

## II.   Procedural History

In February 2019, CoA Institute sent two FOIA requests to Commerce requesting access to the 232 Auto Tariffs Report.  Pl.'s SUMF ¶¶ 5, 7.  CoA Institute sent one request to the Bureau of Industry and Security, which is responsible for creating the report, and one request to the Office of the Secretary, which is responsible for transmitting the report to the President.  *Id*. ¶¶ 5, 7.

In March 2019, CoA Institute filed a complaint to begin this lawsuit, alleging Commerce had failed to provide a timely final determination on or produce records responsive to CoA Institute's request.  Compl. ¶¶ 14–21, ECF No. 1.  In April 2019, Commerce answered the complaint and admitted more than twenty days had elapsed without it issuing a response and that it had produced no records.  Answer ¶¶ 14–21, ECF No. 9.  In June 2019, the Court held an initial scheduling conference and entered a briefing schedule for summary-judgment proceedings.  *See* June 17 Minute Order.  In August 2019, Commerce moved for summary judgment.  *See* Mem. of Law in Supp. of Def.'s Mot. for Summ. J. [hereinafter Def.'s Mot.], ECF No. 20-1.  This opposition and cross-motion follows.[3]

### STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "FOIA cases typically and appropriately are decided on motions for

_____

[3] In August 2019, CoA Institute moved for an order to show cause why Commerce should not be held in contempt and sanctioned for twice violating the court-ordered summary-judgment briefing schedule.  *See* ECF No. 19; *see also* ECF Nos. 21–22 (opposition and reply briefs).  The motion is under advisement.

summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). In a FOIA case, "the burden is on the agency to sustain its action[.]" 5 U.S.C. § 552(a)(4)(B). A district court must determine *de novo* "'whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure[.]'" *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation omitted). The agency "must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed[.]" *Competitive Enter. Inst. v. Envtl. Prot. Agency*, 232 F. Supp. 3d 172, 181 (D.D.C. 2017). An agency can meet its burden by proffering affidavits that "describe the documents and the justifications for nondisclosure with reasonably specific detail" that is "not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see* 5 U.S.C. § 552(a)(4)(B). District courts analyze "all . . . facts and inferences . . . in the light most favorable to the FOIA requester." *Schoenman v. Fed. Bureau of Investigation*, 575 F. Supp. 2d 136, 148 (D.D.C. 2008) (citation omitted). If both parties seek summary judgment, each motion must stand on its own. *See Huffman v. W. Nuclear, Inc.*, 486 U.S. 663, 664 n.11 (1988).

Here, it is proper for the Court to resolve this case on summary judgment because the parties do not genuinely dispute any of the material facts underlying either motion, and both motions present purely legal issues.

**ARGUMENT**

**I.     Commerce concedes the 232 Auto Tariffs Report is an agency record.**

The FOIA permits access to "agency records."  *See* 5 U.S.C. § 552(a)(4)(B);

*Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144–45 (1989).  Here, Commerce

initially considered "whether the Secretary's report constitutes a presidential record

within the meaning of the Presidential Records Act, . . . in which case it would not

be subject to disclosure under FOIA."  Lieberman Decl. Ex. 5 at 1; *see generally*

*Armstrong v. Exec. Office of the President*, 1 F.3d 1274, 1292 (D.C. Cir. 1993)

(discussing the FOIA and the Presidential Records Act).  But the agency appears to

have abandoned that position and did not assert in its motion for summary

judgment that the report is a "presidential record" not subject to the FOIA.  The

report thus is an "agency record" for this case, and CoA Institute need not

affirmatively establish that fact.  *See Multi Ag Media LLC*, 515 F.3d at 1227 (noting

agency has "burden of demonstrating that the documents requested . . . are exempt

from disclosure"); *Schoenman*, 575 F. Supp. 2d at 148 (noting "all . . . facts and

inferences . . . [are construed] in the light most favorable to the FOIA requester").

**II.     Commerce may not rely on Exemption 5 to withhold the report.**

Instead of claiming that the 232 Auto Tariffs Report is a presidential record,

Commerce argues it may withhold the report in full by relying on Exemption 5 and

invoking the presidential-communications and deliberative-process privileges.

That reliance is misplaced; neither privilege applies here.

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the

functioning of a democratic society, needed to check against corruption and to hold

7

the governors accountable to the governed." *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  Courts "must bear in mind that FOIA mandates a strong presumption in favor of disclosure and that the statutory exemptions . . . are to be narrowly construed." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (cleaned up and citations omitted).

Exemption 5 allows agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency[.]"  5 U.S.C. § 552(b)(5).  Courts  interpret this language "as protecting against disclosure those documents normally privileged in the civil discovery context." *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004) [hereinafter *Judicial Watch I*] (citing *Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 91 (1973)).  Courts have recognized both the presidential-communications and deliberative-process privilege as Exemption 5 privileges.  *Id.*

## A.   The 232 Auto Tariffs Report is not an "inter-agency or intra-agency" record.

Commerce cannot rely on Exemption 5 because the report is not an "inter-agency or intra-agency memorandum or letter[.]"  5 U.S.C. § 552(b)(5).  Although courts have read these otherwise straightforward words in an expansive way to cover the President and non-agency components of the Executive Office of the President, *see, e.g.*, *Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 129–31 (D.C. Cir. 2005), that expansion is inconsistent with the textual limitations imposed by Congress and the plain meaning of Exemption 5.

It is "a 'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary . . . meaning . . . at the time Congress enacted the statute.'"  *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019) (citation omitted).  The Supreme Court confirms this canon applies with no less force in the FOIA context.  *See, e.g.*, *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2362–63 (2019) ("[A]s usual, we ask what [a statutory] term's 'ordinary, contemporary, common meaning' was when Congress enacted FOIA in 1966.") (citing *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

The prefixes "inter-" and "intra-" have ordinary meanings that work in tandem with the term "agency" to define the scope of Exemption 5.  They limit any of its attendant privileges to records[4] that have been exchanged *within* or *among* agencies, that is, entities subject to the FOIA.  *See, e.g.*, Webster's Third New International Dictionary 440 (1961) (defining "inter" to mean "between" or "among"); *id.* at 444 (defining "intra" to mean "within").  Neither the President nor his immediate staff within the White House Office—the recipients of the Secretary's report—are an "agency" under the FOIA.  *See, e.g.*, *Meyer v. Bush*, 981 F.2d 1288, 1291–92 (D.C. Cir. 1993); *see also* H.R. Rep. No. 1380, 93d Cong., 2d Session 14 (1974) ("The term ['agency'] is not to be interpreted as including the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assistant the President.").  Records exchanged between Commerce and

---

[4] Or, more specifically, "memorandums or letters"

the White House Office, or the President himself, are not "inter-agency or intra-agency" communications[5] and cannot be withheld under Exemption 5.[6]

The Supreme Court has increasingly expressed deep suspicion of interpretations of the FOIA that deviate from the plain meaning of the statute. Earlier this year, for example, the Court rejected the D.C. Circuit's long-standing construction of the term "confidential" in Exemption 4 and chided the relevant precedent as "a relic from a 'bygone era of statutory construction.'" *Food Mktg. Inst.*, 139 S. Ct. at 2364. In 2011, the Court similarly adopted a text-based approach to Exemption 2 and rejected an overbroad reading of the term "personnel." *See Milner v. Dep't of the Navy*, 562 U.S. 562, 569–71 (2011). In each case, the Court abandoned widely held precedents and looked to the plain meaning and commonsense readings of the statute.

Courts should adopt the same textual approach with Exemption 5. Indeed, the undergirding of the current interpretative regime is already beginning to crumble. The Ninth Circuit's recent rejection of the so-called "consultant corollary"

---

[5] Commerce does not attempt to establish that the 232 Auto Tariffs Report qualifies as an "*intra*-agency memorandum[] or letter[.]" 5 U.S.C. § 552(b)(5) (emphasis added). The agency instead assumes that the report meets Exemption 5's threshold requirement because it is a record exchanged between Commerce and the President, and its invocation of the presidential-communications and deliberative-process privileges is based on that premise. *See* Lieberman Decl. ¶ 7. Commerce failed to argue for the privileging *of its own* decision-making processes.

[6] The Court need not *prohibit* use of the presidential-communications privilege as an absolute matter. The privilege should be limited to instances in which an agency exchanges "memorandum[] or letters" with a component of the Executive Office of the President that is subject to the FOIA, which includes the Council on Environmental Quality, Office of Management and Budget, Office of National Drug Control Policy, Office of Science and Technology Policy, and Office of the U.S. Trade Representative.

is a prime example. Courts have accepted that an agency may withhold a record under Exemption 5 using the deliberative-process privilege whenever it is "solicited by [an] agency," but created by an "outside consultant." *Ryan v. Dep't of Justice*, 617 F.2d 781, 790 (D.C. Cir. 1980). The Supreme Court tried to stem the growth of the "consultant corollary" nearly twenty years ago. It recognized that agencies tended to treat Exemption 5's threshold requirement as "a purely conclusory" matter—as Commerce has done here—that is satisfied whenever "any document [is found] . . . valuable to keep confidential." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 12 (2001). But "[t]here is . . . no textual justification for draining [Exemption 5's threshold] of independent vitality[.]" *Id.* It was the Ninth Circuit that finally rejected the atextual doctrine as explicitly "contraven[ing] Exemption 5's plain language, which clearly refers only to 'agencies.'" *Rojas v. Fed. Aviation Admin.*, 927 F.3d 1046, 1055 (9th Cir. 2019) (citation omitted).[7] And the Ninth Circuit is not alone. The Sixth Circuit also has rejected the atextual expansion of the "consultant corollary" to entities beyond agencies. See *Lucaj v. Fed. Bureau of Investigation*, 852 F.3d 541, 547–48 (6th Cir.

---

[7] The *Rojas* opinion is instructive for distinguishing the cases that Courts have used to justify the extension of Exemption 5 to records exchanged with the White House. For example, the *Rojas* court criticized the D.C. Circuit's decision in *Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971), which it identified as the "source" of the "consultant corollary." *See Rojas*, 927 F.3d at 1056 ("The [*Soucie*] court cited no authority for [its] propositions. Nor did it acknowledge, never mind reconcile, FOIA's text and purpose."). Other cases are similarly conclusory in addressing the "inter-agency or intra-agency" requirement, *see, e.g.*, *Mink*, 410 U.S. at 85, or they are inapt because they involved White House components subject to the FOIA. *See, e.g.*, *Bureau of Nat'l Affairs, Inc. v. Dep't of Justice*, 742 F.2d 1484 (D.C. Cir. 1984) (Office of Management and Budget).

2017).  This Court should join the Supreme Court and the Ninth and Sixth Circuits by returning to a text-based reading of Exemption 5.

Adopting the plain meaning of Exemption 5 would hardly threaten the confidentiality of presidential decision-making, nor would it impinge on executive privilege or frustrate the secrecy of presidential advice.  The Presidential Records Act ("PRA") already governs the management and disclosure of records "created or received by the President," or his staff and advisers, which "relate to or have an effect upon the carrying out of [his] constitutional, statutory, or other official or ceremonial duties[.]"  44 U.S.C. § 2201(2).  Access to those records is unavailable through the FOIA.  *See id.* § 2204.  Although the PRA includes a carve-out for "official records of an agency," *id.* § 2201(2)(A), there is no concern that presidential records would be subject to disclosure under the FOIA.  As long as the President (1) manifests an intent to retain legal control of a record he solicits or creates, and (2) restricts an agency's ability to use and dispose of the record, disclosure through FOIA would not be possible.  *See Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 221–24 (D.C. Cir. 2013); *see also id.* at 231 ("There are very few instances in which a construction of FOIA would put the President on the horns of a dilemma between surrendering his confidentiality and jeopardizing his safety.").

Courts already recognize the limits of applying Exemption 5 in the analogous instance of records exchanged between agencies and Congress.  And the Circuit has recognized that "Congress . . . [could] have drafted [Exemption 5] more broadly to include Executive Branch communications to Congress[.] . . . But Congress did not,

and the words simply will not stretch to cover this situation, because Congress is simply not an agency." *Dow Jones & Co. v. Dep't of Justice*, 917 F.2d 571, 574 (D.C. Cir. 1990).  An agency may withhold congressional communications under the deliberative-process privilege if they "[a]re 'part and parcel of *the agency's* deliberative process[.]"  *Id.* at 575.  But an agency may not withhold records that are "created specifically to assist Congress" and shared "for the sole purpose of assisting [a] Committee with *its* deliberations."  *Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 604 (D.C. Cir. 2001) (emphasis added).  To be sure, records exchanged within the Executive Branch are somewhat distinct from those exchanged with another branch of government.  But the relevant policy concerns are the same.  And Congress and the President can maintain control over records they seek to keep as their "own" outside the ambit of the FOIA.  *See, e.g.*, *United We Stand Am., Inc. v. Internal Revenue Serv.*, 359 F.3d 595, 597 (D.C. Cir. 2004).

Without evidence that the President intended a record to be presidential, it is an agency record.  And because the President is not an agency under the FOIA, Commerce cannot avail itself of Exemption 5's protection that is statutorily limited to "inter-agency or intra-agency" materials.  5 U.S.C. § 552(b)(5).

## B.  The presidential-communications privilege does not apply to the 232 Auto Tariffs Report.

Even if Commerce could satisfy Exemption 5's threshold requirement, the presidential-communications privilege still does not apply to the 232 Auto Tariffs Report because (1) Section 232 mandates its disclosure and (2) the President has no confidentiality interest in the report or its contents.

13

1. **Section 232 mandates that Commerce disclose the report, and the presidential-communications privilege cannot override that congressional directive.**

Congress delegated authority to Commerce and the President to levy tariffs under Section 232 but conditioned the exercise of that authority on Commerce's creation of a report on the national-security impacts of the importation of the article in question and its publication of that report in the *Federal Register*.  19 U.S.C. § 1862(b)(3)(B).  Congress also provided that Commerce could redact only classified or proprietary information.  *Id.*  Commerce now tries to rely on the presidential-communications privilege to withhold the report in full.  That reliance is unavailing.

One important factor courts consider when deciding whether the presidential-communications privilege applies is if the communication was made in support of the President exercising an inherent Article II power.  In its modern regenesis in *United States v. Nixon*, the Supreme Court grounded the President's unique privileges in his enumerated Article II powers.  418 U.S. 683 (1974).  The court wrote that "[w]hatever the nature of the privilege of confidentiality of Presidential communications in the exercise of Article II powers, the privilege . . . derive[s] from the supremacy of each branch *within its own assigned area of constitutional duties*."  *Id.* at 705 (emphasis added).  The *Nixon* court continued that certain "privileges flow from the nature of enumerated powers [and] . . . the protection of the confidentiality of Presidential communications has similar constitutional underpinnings."  *Id.* at 705–06.  Four short years later, the Supreme Court reiterated that the "privilege protect[s] Presidential communications *in the*

14

*exercise of Article II powers*[.]"  *N.Y. Times Co. v. Jascalevich*, 439 U.S. 1317, 1323 (1978) (emphasis added) (citing *Nixon*).

This Circuit has followed a similar path, attaching special significance to the type of power the President is exercising when considering whether the privilege applies.  For example, the privilege applied in *In re Sealed Case* where "the documents in question were generated in the course of advising the President in the exercise of his appointment and removal power, a quintessential and nondelegable Presidential power."  121 F.3d 729, 752–53 (D.C. Cir. 1997).  So too in *Judicial Watch, Inc. v. Department of Defense*, the privilege applied when the materials involved "the extraordinary decision confronting the President in considering whether to order a military strike on Osama bin Laden's compound in Pakistan, . . . [thus implicating] the exercise of an informed judgment by the President as Commander in Chief[.]"  913 F.3d 1106, 1111 (D.C. Cir. 2019) [hereinafter *Judicial Watch II*] (citing U.S. Const. art. 2, sec. 2).  The Circuit also found the privilege applied to memoranda in *Loving v. Department of Defense* where "the Rules for Courts–Martial direct[ed] the Judge Advocate General to submit his recommendation so the President may act upon it, and it is the President who promulgates the Rules for Courts–Martial."  550 F.3d 32, 40 (D.C. Cir. 2008) (citation omitted).  Legal proceedings within the Armed Forces are central to the President's role as Commander-in-Chief.

But *Judicial Watch I* shows that even where an inherent Article II power is in play, the presidential-communications privilege is not all-encompassing.  The

Circuit held "that the privilege protected from disclosure pardon documents 'solicited and received' by the President or his immediate White House advisers but not 'all agency documents prepared in the course of developing the Deputy Attorney General's pardon recommendations for the President.'" *Judicial Watch II*, 913 F.3d at 1111 (citing *Judicial Watch I*, 365 F.3d at 1114). The two-fold basis for that holding is evident in *Judicial Watch I*. *First*, extending the privilege to cover *anything* relating to presidential decision-making "would sweep within the reach of the presidential privilege much of the functions of the executive branch, namely, to advise the President in the performance of his Article II duties." *Judicial Watch I*, 365 F.3d at 1122. Indeed, the contrary approach would work against "a democratic form of government where the public's right to know how its government is conducting its business has long been an enduring and cherished value." *Id*. *Second*, extending the privilege also "would be inconsistent with [DOJ's] historical approach of invoking the deliberative process privilege rather than the presidential communications privilege to protect its internal documents and deliberations from public disclosure." *Id*.

District courts likewise have found the lack of an Article II authority relevant in reviewing agency use of the presidential-communications privilege. *See, e.g.*, *Ctr. for Effective Gov't v. Dep't of State*, 7 F. Supp. 3d 16, 25 (D.D.C. 2013) (finding privilege inapplicable because "this is not a case involving 'a quintessential and nondelegable Presidential power' . . . where separation of powers concerns are at their highest") (citation omitted). *But see United States v. Philip Morris USA, Inc.*,

No. 99-2496, 2004 WL 3253662, at *1–2 (D.D.C. Sept. 9, 2004) (rejecting distinction between delegable and nondelegable powers); *Judicial Watch I*, 365 F.3d at 1123 (calling distinction an "arbitrary line").

Here, the creation, transfer, use, and required publication of the 232 Auto Tariffs Report is dictated by statute as part of Congress's delegation of authority to Commerce and the President.  The process neither implicates the President's inherent Article II duties nor raises separation-of-powers concerns.  It is not that the statutory, as opposed to constitutional, basis of the President's Section 232 role *prohibits* use of the presidential-communications privilege; rather, because that authority is statutory, and the result of delegation, Congress can *limit* the privilege, which it has chosen to do.  Congress conditioned the President's exercise of tariff authority under Section 232 on Commerce creating and disclosing an investigatory report and specified which materials Commerce may redact: "classified" or "proprietary information."  19 U.S.C. § 1862(b)(3)(B).

Section 232 is, in this sense, effectively a "reverse Exemption 3" statute, where instead of the report being "*exempted from disclosure* by [a] statute" other than the FOIA, 5 U.S.C. § 552(b)(3) (emphasis added), Congress has used a statute outside the FOIA to *mandate the disclosure* of information and specify what information an agency may withhold.  Congress's use of this statutory approach is hardly unique.  *See, e.g.*, 50 U.S.C. § 1846(c) (requiring the Department of Justice to publish reports on its use of pen registers and trap and trace devices, subject to redactions for national security).  Indeed, the National Environmental Policy Act

("NEPA") likewise requires the preparation of reports (*i.e.*, environmental impact statements) and their publication, expressly subject to FOIA's exemptions.   42 U.S.C. § 4332(2)(C).  ("Copies of such statement . . . shall be made available to the President, the Council on Environmental Quality and to the public as provided by section 552 of title 5," the FOIA.).  The Supreme Court reasoned that under NEPA, "Congress has thus effected a balance between the needs of the public for access to documents prepared by a federal agency and the necessity of nondisclosure or secrecy." *Weinberger v. Catholic Action of Hawaii*, 454 U.S. 139, 145 (1981).[8]

So too here.  Congress struck a balance between the public's need for access to Section 232 reports and the government's need for nondisclosure of some portions of those reports.  It did so by requiring that Commerce release "any portion of the report . . . which does not contain classified information or proprietary information[.]"  19 U.S.C. § 1862(b)(3)(B).  NEPA expressly allows an agency to withhold information based on *any* FOIA exemption; Section 232 only allows Commerce to withhold classified or proprietary information.

Congress's ability to balance disclosure and nondisclosure when it is designing statutory schemes is contrasted with its inability to intrude on the President's privileges when they are applied to the performance of inherent, nondelegable Article II powers.  The Supreme Court and this Circuit repeatedly have stressed the importance of privilege in that context.  *See Jascalevich*, 439 at

---

[8] The *Weinberger* court scolded the Ninth Circuit for refusing to "accept[] the balance struck by Congress" and instead "engrafting onto the statutory language unique concepts of its own making."  454 U.S. at 145.

1323; *Nixon*, 418 U.S. at 705; *Judicial Watch II*, 913 F.3d at 1111; *Loving*, 550 F.3d at 40; *In re Sealed Case*, 121 F.3d at 752–53.

Because the President's Section 232 authority is solely a creature of statutory delegation, Congress retains the power to condition the exercise of that authority, including mandating disclosure of materials that Commerce creates for use by the President.  That is exactly what Congress has done.[9]  Commerce cannot now claim that the report is exempt from disclosure.

## 2. The President has no confidentiality interest in the 232 Auto Tariffs Report.

The purpose of the presidential-communications privilege is to maintain the confidentiality of presidential advice.  Section 232's publication requirement makes long-term confidentiality impossible and, the President's publication of the report's contents, findings, and recommendations has degraded any short-term confidentiality interest.

Confidentiality is front and center in every opinion discussing the presidential-communications privilege.  In *Nixon*, the Supreme Court explained that "the confidentiality of Presidential communications has . . . constitutional underpinnings[.]"  418 U.S. at 705–06.  The Circuit has directed the privilege must "be construed as narrowly as is consistent with ensuring that the confidentiality of the President's decisionmaking process is adequately protected."  *In re Sealed Case*,

[9] In this sense, Professor Freund was incorrect when, in the aftermath of *Nixon*, he wrote that the question of whether the Constitution or the common law grounds the privilege "is not a very meaningful one."  Paul A. Freund, *On Presidential Privilege*, 88 Harv. L. Rev. 13, 20 (1974).

121 F.3d at 752.  It has explained that the "scope of the . . . privilege is thus defined in terms of communications that involve . . . confidential presidential decisionmaking," *Judicial Watch II*, 913 F.3d at 1110, and exists because of "the need for confidentiality to ensure that presidential decision-making is of the highest caliber[.]"  *Judicial Watch I*, 365 F.3d at 1116 (citation omitted).  This line of cases harmonizes with the rule that FOIA exemptions "must be 'narrowly construed,'" *Milner*, 562 U.S. at 565 (citation omitted), and that "Exemption 5 is to be construed 'as narrowly as consistent with efficient Government operation.'"  *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 773–74 (D.C. Cir. 1988) (citation omitted).

Here, the privilege should be construed narrowly to require Commerce to release the report because—by statute—it cannot remain confidential.  Section 232 requires publication, and both the creators and readers of the report know full well that nearly everything in the report will be published.  As the Supreme Court recently ruled, publication is the antithesis of confidentiality.  *See Food Mktg. Inst.*, 139 S. Ct. at 2363 (holding under Exemption 4 "'confidential' mean[s] . . . 'private' or 'secret'") (citing Webster's Seventh New Collegiate Dictionary 174 (1963)).

In addition to the impossibility of long-term confidentiality, the President has degraded any short-term confidentiality interest that may attach while he decides whether to impose tariffs because he published summaries and excerpts of the report on the White House website.  "Although . . . disclosure of portions of a document subject to the presidential communications privilege does not waive the privilege as to the entire document, . . . the widely publicized nature of [a document]

is important in considering the confidentiality interests implicated by the [document's] disclosure under FOIA." *Ctr. for Effective Gov't*, 7 F. Supp. 3d at 26 (citing *In re Sealed Case*, 121 F.3d at 745). This "limited approach to waiver in the executive privilege context is designed to ensure that agencies do not forego voluntarily disclosing some privileged material out of the fear that by doing so they are exposing other, more sensitive documents." *In re Sealed Case*, 121 F.3d at 741. But that concern is not implicated here because it was the President, not Commerce, who degraded the confidentiality interests by voluntarily revealing the report's contents.

As Commerce's declarant readily shows, the President himself revealed the Secretary's findings and recommendations. The President disclosed that "the Secretary found that American-owned automotive R&D and manufacturing are vital to national security." Liberman Decl. ¶ 3; Liberman Decl. Ex. 8. He revealed the "Secretary found and advised [him] of his opinion that automobiles and certain automobile parts are being imported into the United States in such quantities and under such circumstances as to threaten to impair the national security of the United States." Liberman Decl. ¶ 8. The President also revealed that the "Secretary . . . concluded that the present quantities and circumstances of automobile and certain automobile parts imports threaten to impair the national security as defined in section 232[.]" Liberman Decl. ¶ 9. He even revealed that "the Secretary recommended actions to adjust automotive imports so that they will not threaten to impair the national security. One recommendation was to pursue

negotiations to obtain agreements that address the threatened impairment of national security." Liberman Decl. ¶ 11.

The President not only summarized the Secretary's findings and recommendations, but he also *quoted directly* from the report. It is now public knowledge that the report states that because:

> "Defense purchases alone are not sufficient to support . . . R&D in key automotive technologies," the Secretary found that "American-owned automobile and automobile parts manufacturers must have a robust presence in the U.S. commercial market" and that American innovation capacity "is now at serious risk as imports continue to displace American-owned production."

Liberman Decl. ¶ 6. The President also revealed that the report states, "imports are 'weakening our internal economy' and that '[t]he contraction of the American-owned automotive industry, if continued, will significantly impede the United States' ability to develop technologically advanced products that are essential to our ability to maintain technological superiority to meet defense requirements and cost effective global power projection.'" Liberman Decl. ¶ 8.

The press have widely publicized these revelations, as they have been on the White House website for months.[10]   As a result, any short-term confidentiality interests in the report are gone. Paired with Section 232's publication requirement, which eliminates any long-term confidentiality interest, the President has no confidentiality interest in the report or its contents. Given Congress's mandate that

---

[10] *See, e.g.*, Vivian Salama, *et al.*, *White House Puts Off Final Decision on Auto Tariffs for 180 Days*, Wall St. J., May 17, 2019, https://on.wsj.com/2NC7nOC (discussing proclamation); Ana Swanson, *Trump Lifts Metal Tariffs and Delays Auto Levies, Limiting Global Trade Fight*, N.Y. Times, May 17, 2019, https://nyti.ms/2U6SvJm (same).

Commerce make the 232 Auto Tariffs Report public, this Court should narrowly construe the presidential-communications privilege to avoid shielding the report from release under the FOIA.

### C.   The deliberative-process privilege does not apply to the 232 Auto Tariffs Report.

In addition to the presidential-communications privilege, Commerce claims the deliberative-process privilege allows it to withhold the report in full. *See* Def.'s Mot. at 10–13. It is mistaken for four reasons.

*First*, Commerce likely means to claim the deliberative-process privilege in the alternative, not in addition to the presidential-communications privilege. Courts in this Circuit treat the two privileges as non-overlapping, with the former applying to agencies and the latter to the President. *See Judicial Watch I*, 365 F.3d at 1122 (not extending presidential-communications privilege because it "would be inconsistent with the [agency's] historical approach of invoking the deliberative process privilege rather than the presidential communications privilege to protect its internal documents and deliberations from public disclosure").

*Second*, Commerce has failed to describe the specific *agency* decision or *agency* decision-making process implicated by the 232 Auto Tariffs Report. *See* Liberman Decl. ¶ 7. The agency instead points to *presidential* decision-making and *presidential* use of the report. *E.g.*, Liberman Decl. ¶ 41 ("The content of the Automotive Report is pre-decision because it is provided to the President for *him and his advisers* to consult in deciding what actions if any are required.") (emphasis added); Liberman Decl. ¶ 42 ("Release of the report would harm the President's

Section 232 decision-making process . . . [and] the USTR's ongoing negotiation of agreements[.]").  Commerce must instead identify, at the outset, that it created "the documents . . . for the purpose of aiding the agency's deliberative process" and explain why they are impacted by disclosure.  *Dow Jones & Co.*, 917 F.2d at 575. It has not done so.

*Third*, despite Commerce's confused and potentially infirm invocation of the deliberative-process privilege, that privilege exempts only from disclosure materials that are both "predecisional" and "deliberative"—that is, materials that "reflect[s] advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated, or the personal opinions of the writer prior to the agency's adoption of a policy."  *Elec. Frontier Found. v. Dep't of Justice*, 739 F.3d 1, 7 (D.C. Cir. 2014) (cleaned up and citation omitted).  The privilege recognizes that "officials will not communicate candidly among themselves if each remark is a potential item of discovery and front-page news[.]"  *Klamath Water Users Protective Ass'n*, 532 U.S. at 8–9.

The deliberative-process privilege does not extend to materials an agency has adopted as its final position.  That is because "the public is vitally concerned with the reasons which . . . suppl[ied] the basis for an agency policy actually adopted."  *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 152–53 (1975). Those reasons "constitute the 'working law' of the agency and . . . [are] outside the protection of Exemption 5."  *Id*.  This limitation prevents an agency from "develop[ing] a body of 'secret law,' used . . . in the discharge of its regulatory duties

and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.'"  *Schlefer v. United States*, 702 F.2d 233, 244 (D.C. Cir. 1983).

Here, Commerce claims the 232 Auto Tariffs Report is pre-decisional and deliberative, and so protected in full.  But in so doing, Commerce ignores that Congress mandated that the report be published in the *Federal Regist*er, 19 U.S.C. § 1862(b)(3)(B), and that CoA Institute has requested the *final* version of the report submitted to the President.  As a result, the "pre-decisional" aspect of the deliberative-process privilege *about the agency* is absent, and the entire policy rationale for protecting the report under the privilege evaporates.

*Fourth*, as Commerce rightly points out, the deliberative-process "privilege ensures that persons in an advisory role . . . [may] express their opinions freely to agency decision-makers without fear of publicity."  Def.'s Mot. at 12 (cleaned up and citation omitted).  The privilege ensures that agency staff provides advice "without fear of later being subject to public ridicule or criticism."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

Here, Commerce claims that exposure of the report to "public view would inhibit frank discussion of policy matters and likely impair the quality of decisions." Def.'s Mot. at 12 (citation omitted).

> Release of [the report] could also chill others from engaging in free and fulsome analysis of positions to be taken by DOC.  Agency personnel may hold back from sharing important observations, analyses and recommendations, or factual information they thought should be considered, if they knew that such deliberations would be made public, and this would seriously undermine the development of adequate,

> thorough, thoughtful, soundly based analysis, especially where, as here, it is intended for the use of the President and other senior executive branch officials.

Lieberman Decl. ¶ 42.

But Commerce's claim that deliberations would be chilled if agency staff "knew that such deliberations would be made public" is unfounded. *Id.* Section 232 governs the creation and use of the report, and agency staff presumably know that Section 232 mandates the publication of the report they are creating. *Cf. N.Y. Times Co. v. Dep't of Justice*, 756 F.3d 100 (2d Cir. 2014) (rejecting claim that disclosure of Office of Legal Counsel ("OLC") memorandum would discourage agencies from seeking OLC advice and opining that "[w]e need not fear that OLC will lack for clients") (subsequent procedural history omitted). This is especially true because Commerce has invoked the Section 232 process five times during this Administration and has already published two other Section 232 reports. Pl.'s SUMF ¶ 1.[11] Any "chill" that redounds in the process is statutory and baked in when Commerce drafts the report. Disclosure to CoA Institute through the FOIA is merely an alternative mechanism to publication in the *Federal Register*. One way or the another, the information is coming out. And Commerce *knows* it.

## D.    There are no temporary privileges, and Commerce cannot waive the President's privilege.

Taken seriously, Commerce's position requires one of two things to be true. Either (1) there are "temporary" privileges that protect the report while the

---

[11] Commerce also created a Section 232 report on the importation of uranium but, despite its promises to do so, has not yet made the report public. Pl.'s SUMF ¶¶ 11–15.

President decides whether to impose tariffs, or (2) Commerce and the President waive their respective privileges when Commerce complies with Section 232 and publishes the report in the *Federal Register*, as it has consistently done throughout the provision's use. *See* Valvo Decl. ¶ 8; Valvo Decl. Ex. 3 (detailing historical usage of Section 232 and report publications). Commerce's position here requires one of these two things to be true because twenty-two Section 232 reports have been published. The trouble for Commerce is neither of these propositions are true.

### 1. There are no temporary FOIA privileges.

Commerce appears to argue that the presidential-communications and deliberative-process privileges apply only, or apply with special force, while the President considers whether to impose tariffs under Section 232 relying on the report. That position is unfounded and finds no home in FOIA law. Privileges either apply or they don't.

Both privileges at issue are a species of executive privilege. The Supreme Court has directed "that documents shielded by executive privilege remain privileged even after the decision to which they pertain may have been effected[.]" *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 359–60 (1979). The presidential-communications privilege "covers final and post-decisional materials as well as pre-deliberative ones. . . . [N]one of the cases suggest that it encompasses only the deliberative or advice portions of documents." *In re Sealed Case*, 121 F.3d at 745.

Likewise, the deliberative-process privilege does not expire when a final decision is made: "Contrary to [a requester's] assertion that materials lose their Exemption 5 protection once a final decision is taken, it is the document's role in the agency's decision-making process that controls." *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 112–13 (D.D.C. 2005); *see Judicial Watch, Inc. v. Dep't of Justice*, 102 F. Supp. 2d 6, 16 (D.D.C. 2000) (calling argument that "privilege [is] temporary," "unpersuasive"). The privilege also "is not lost simply . . . because of the passage of time." *Bruscino v. Fed. Bureau of Prisons*, No. 94-1955, 1995 WL 444406, at *5 (D.D.C. May 15, 1995) (citation omitted), *vacated on other grounds*, 1996 WL 393101 (D.C. Cir. June 24, 1996).[12]   Instead, potentially deliberative materials are only disclosable under the FOIA if they are incorporated into a final opinion. *See Sears*, 421 U.S. at 161.

If Commerce is correct that either privilege applies, they will apply even after the President decides whether to impose tariffs. But that conclusion defies both Section 232—which mandates publication subject to limited withholding of classified or proprietary information, 19 U.S.C. § 1862(b)(3)(B)—and the historical record. *See* Valvo Decl. ¶ 8; Valvo Decl. Ex. 3.

Commerce also appears to suggest that the privileges have special significance while the President is developing his final action based on the report.

---

[12] *Cf.* 5 U.S.C. § 552(b)(5) (providing "deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested"). This temporal limitation is not relevant here because it is a statutory limitation and does not depend on when the President makes his decision, as Commerce's position appears to do.

The agency claims that "premature release of [the report] would harm the President's Section 232 decision-making process by revealing information pertinent to the USTR's ongoing negotiations and compromise any such further action the President may deem necessary."  Def.'s Mot. at 13; *see* Lieberman Decl. ¶ 39 ("To publish the Automotive Report while negotiations remain ongoing . . . could compromise or undermine the government's efforts."); *id*. ¶ 42 (expressing concerns about "revealing information pertinent to the USTR's ongoing negotiation of agreements").  But Commerce offers no legal authority to support the notion that privileges should be afforded special significance in their temporary application.

Because the presidential-communications and deliberative-process privileges are not temporary, even if they apply at all to Section 232 reports, they must protect reports before *and* after the President acts.  That outcome is impossible to square with the statute.  Thus, if they apply, Commerce must be waiving both privileges when it publishes the reports.

### 2. Commerce cannot waive the presidential-communications privilege.

As discussed above, if Commerce is correct that privileges protect the report, they protect it before *and* after the President decides whether to impose tariffs.  But at least twenty-two Section 232 reports have been published.  *See* Valvo Decl. ¶ 8. Thus Commerce must be waiving the privileges, which creates two problems.

*First*, if a privilege attaches to reports that Commerce must publish under Section 232, a waiver of that privilege cannot be compelled by statute or otherwise. *See generally Lefkowitz v. Turley*, 414 U.S. 70, 76 (1973) (holding statute

unconstitutional where it compelled waiver of "constitutional privilege against . . . self-incrimination"); *Miranda v. Arizona*, 384 U.S. 436 (1966); *U.S. ex rel. Schweizer v. Oce, N.V.*, 577 F. Supp. 2d 169, 175–76 (D.D.C. 2008) (collecting cases where court-compelled disclosure did not waive privilege).  But Commerce has not argued that Section 232 imposes any unconstitutional conditions on the delegation of tariff authority to it and the President.  Thus, it must be that the statute prevents the privileges from attaching in the first place.

*Second*, Commerce alternatively could have chosen to waive the deliberative-process privilege but it could not have waived the presidential-communications privilege.  Although there is case law that allows agencies to *assert* presidential privileges in the FOIA context, *see Am. Ctr. for Law & Justice v. Dep't of State*, 330 F. Supp. 3d 293, 308 (D.D.C. 2018), it is a far different matter to *waive* a privilege. This is because under the FOIA the agency does not technically invoke the privilege; instead, it decides "to withhold a document from disclosure under a statute through which the government has chosen to make government records available to the public outside of discovery[.]"  *Lardner v. Dep't of Justice*, No. 03-0180, 2005 WL 758267, at *8 (D.D.C. Mar. 31, 2005).  An "agency does not invoke a privilege against discovery when it withholds a document under one of the [FOIA] exemptions, because there is no discovery to resist."  *Id.*  Instead, "the agency simply makes the determination that a statutory provision protects the documents from disclosure, and withholds the documents on that ground."  *Id.*

Conversely, absent a FOIA request for a Section 232 report, Commerce is not "determin[ing] that a statutory provision protects the documents from disclosure[.]" *Id*. Thus outside the FOIA context, Commerce on its own cannot treat a Section 232 report as protected by presidential privilege. So if Commerce believed the privilege applied, as it claims here, then it would need to determine whether the President waived that privilege before publishing the report.

In the non-FOIA context, the rule allowing an agency to assert presidential privileges does not apply; only the President, or perhaps his immediate advisors, can invoke or waive the privilege. Yet, there is no evidence that, historically, the President has done so with each of the Section 232 reports that have been made public by Commerce and the forebearers of its statutory authority. *See* Valvo Decl. ¶ 9. Indeed, in at least three instances, reports were made public on the same or next day after being sent to the President. *See* Valvo Decl. ¶ 8. And twenty of the twenty-two reports created under Section 232 were published by this point after their creation. *Id*. ("It has taken Commerce longer to release a Section 232 report only once before[.]" The Secretary of the Treasury delayed the other report.)

This lack of historical evidence is likely because Commerce is taking a novel position here and simply has not previously grappled with whether the reports are privileged. The consistent historical publication of the reports suggests Commerce does not believe the reports are privileged outside the FOIA context and has instead published them in due course contemporaneous with their creation. It is only now,

as Commerce and the President scramble to justify non-disclosure under FOIA, that the agency claims a privilege attaches.

This returns the Court to the central question of this case: may Congress condition Commerce and the President's delegated authority under Section 232 on the publication of the report?  If it may do so, then it has done so, and Commerce's assertion of both privileges must fail.  If it may not, then Section 232's publication requirement unconstitutionally infringes on the President's executive privileges. The Court should avoid giving Section 232 such an extreme reading.  The more natural reading is that Section 232 provides that reports generated under that section's authority must be published, subject only to redactions for classified or proprietary information.  The exclusive application of those redactions must hold for the FOIA context as well.  Any other result would produce an absurdity.

## E. Commerce must segregate non-exempt information in the report and release it to CoA Institute.

As a final matter, even if the presidential-communications and deliberative-process privileges were to apply, Commerce has failed to show that it has released all reasonably segregable portions of the 232 Auto Tariffs Report.

The failure to carefully review responsive records is contrary to the explicit mandate of the FOIA, which requires an agency to release "*any* reasonably segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b) (emphasis added); *see id.* § 552(a)(8)(A)(ii)(II) (an agency must "take reasonable steps necessary to segregate and release nonexempt information"). An adequate segregability analysis is so vital to the FOIA's broad mandate of

disclosure that every court has "an affirmative duty to consider the segregability issue *sua sponte*." *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). "A district court that 'simply approve[s] the withholding of an entire document without entering a finding on segregability, or lack thereof,' errs." *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993) (citations omitted).

In this case, Commerce has failed to defend the reasonableness of its efforts to release segregable portions of the 232 Auto Tariffs Report. Without an adequate showing that "explain[s] in detail which portions of the document are disclosable and which are allegedly exempt," an agency cannot carry its burden and is not entitled to summary judgement. *Edmonds Inst. v. Dep't of the Interior*, 383 F. Supp. 2d 105, 108 (D.D.C. 2005). Commerce merely asserts, without adequate specificity and in a conclusory fashion, that "exempt information is so inextricable intertwined with nonexempt information" it would be impossible to disclose *anything* short of the full report. Liberman Decl. ¶ 43 ("[Partial disclosure] would result in a meaningless set of words or phrases which have no or minimal information content."). Commerce's position is deficient for four reasons.

*First*, courts have rejected a categorical application of Exemption 5, particularly with the "deliberative or policy-making process[]" privileges because it often blurs the vital distinction between "deliberative" materials, on the one hand, and "purely factual, investigative matters on the other." *Mink*, 410 U.S. at 89. To the extent there is factual material in the report, Commerce must release it because

"factual segments which do not reveal the deliberative process . . . are not intertwined with the policy-making process." *Ryan*, 617 F.2d at 791.

*Second*, the President has already revealed many of the contents of the 232 Auto Tariffs Report and several of its central findings. *See, e.g.*, Liberman Decl. Ex. 8. Not only has that revelation degraded any cognizable confidentiality interests in the report, but it reveals that there is *some* material that should be released as part of the public domain. *See Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983); *see also Chesapeake Bay Found., Inc., v. U.S. Army Corps of Eng'rs*, 722 F. Supp. 2d 66, 72 (D.D.C. 2010).

*Third*, Section 232 already anticipates that its reports will be segregable because Commerce may redact only "classified" and "proprietary" information before publication in the *Federal Register*. 19 U.S.C. § 1862(b)(3)(B).

*Fourth*, Commerce is mistaken that it need not disclose segregable material that it finds "meaningless" or of little "information content." Def.'s Mot. at 14; Liberman Decl. ¶ 43. This confuses the relevant standard, which only concerns "non-exempt information so inextricably intertwined with . . . exempt information that [its] release . . . would produce only *incomplete, fragmented, unintelligible sentences* composed of *isolated meaningless words*." *Nat'l Sec. Archive v. Cent. Intelligence Agency*, 402 F. Supp. 2d 211, 220–21 (D.D.C. 2005) (emphasis added). Moreover, Commerce is not positioned to judge whether portions of records will be "useful" or "informational" to CoA Institute. Courts often require agencies to release names and dates associated with records, even if their substantive content

is exempt.  *See, e.g.*, *Judicial Watch, Inc. v. Dep't of the Treasury*, 796 F. Supp. 2d 13, 29–30 (D.D.C. 2011) (ordering agency to release portions of meeting minutes that indicate dates and attendees).   Here, the 232 Auto Tariffs Report likely contains significant purely factual information, or information already in the public domain because the President has disclosed it, that is meaningful *and* informative.

## CONCLUSION AND RELIEF SOUGHT

For these reasons, the Court should deny Commerce's motion for summary judgment; grant CoA Institute's motion; order Commerce to produce the 232 Auto Tariffs Report, subject to redactions of classified and proprietary information; and grant such other relief as the Court considers appropriate.

Date: September 3, 2019                    Respectfully submitted,

                                           */s/ R. James Valvo, III*
                                           R. James Valvo, III (D.C. Bar No. 1017390)
                                           Ryan P. Mulvey (D.C. Bar No. 1024362)
                                           Lee A. Steven (DC Bar. No. 468543)
                                           CAUSE OF ACTION INSTITUTE
                                           1875 Eye St., NW, Suite 800
                                           Washington, DC 20006
                                           Telephone: (202) 499-4232
                                           Facsimile: (202) 330-5842
                                           james.valvo@causeofaction.org
                                           ryan.mulvey@causeofaction.org
                                           lee.steven@causeofaction.org

                                           *Counsel for Plaintiff*